

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| **Peggy Harrison-Jenkins**, ) | Civil Action No. 2:11-2551-DCN-BM |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | |
| **Medical University of South Carolina** ) | |
| ) | |
| Defendant. ) | |
| _____) | |

This employment discrimination case has been filed by the Plaintiff pro se. By Order filed October 13, 2011, the Clerk was directed to issue and forward summons to Plaintiff for service of process.

On November 10, 2011, the Defendants[1] filed a motion to dismiss and/or for more definite statement, which the Court considered as a motion for a more definite statement pursuant to Rule 12(e), Fed.R.Civ.P. This Rule allows a party to move for a more definite statement of a pleading "which is so vague or ambiguous that the party cannot reasonably prepare a response". Defendants noted in their motion that Plaintiff in her Complaint appeared to allege violations of, or at least referenced, the South Carolina Human Affairs Law, Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Age Discrimination in Employment Act (ADEA), and the Equal Pay Act (EPA). However, the Defendants argued, inter alia, that Plaintiff had failed to provide "a short and plain statement of facts as to each and MUSC's involvement in the violation

---

[1]There were originally two named Defendants - MUSC and the Department of Pediatrics.

1

alleged in each claim", failed to set forth how Plaintiff had been harmed or injured by actions and/or omissions of MUSC, and failed to provide specific, or at least approximate, dates for when the actions alleged occurred. After consideration of the Defendants' motion and Plaintiff's responses, the Defendants' motion was granted, in part[2], and denied, in part. In consideration of Plaintiff's <u>pro se</u> status, she was provided with specific instructions as to what she needed to do clarify her claims, and was given twenty (20) days to provide the information set forth in the Court's Order. <u>See</u> Court Docket No. 43 (Order filed December 1, 2011).

Plaintiff responded to the Court's Order with two filings, both on January 3, 2012, totaling eighty-nine (89) pages. <u>See</u> Court Docket Nos. 49 and 50. The Defendant then filed a motion to dismiss pursuant to Rule 12, Fed.R.Civ.P, on January 17, 2012. As the Plaintiff is proceeding <u>pro se,</u> a <u>Roseboro</u> Order was entered by the Court on January 18, 2012, advising Plaintiff of the importance of a dispositive motion and of the need for her to file an adequate response. Plaintiff was specifically advised that if she failed to respond adequately, the Defendant's motion may be granted, thereby ending her case. Plaintiff responded by filing a seven hundred thirty-two (732) page memorandum in opposition with supporting exhibits on February 21, 2012.

The Defendant's motion is now before the Court for disposition.[3]

---

[2]Pursuant to the Court's Order of December 1, 2011, the Department of Pediatrics was dropped as a party Defendant, leaving the Medical University of South Carolina (MUSC) as the only Defendant.

[3]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(g), D.S.C. The Defendant has filed a motion to dismiss. As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.



**Discussion**

When considering a Rule 12 motion to dismiss, the Court is required to accept the allegations in the pleading as true, and draw all reasonable factual inferences in favor of the Plaintiff. The motion can be granted only if Plaintiff has failed to set forth in her Complaint sufficient factual matters to state a plausible claim for relief "on its face". Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Additionally, a Federal Court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case; see Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972); and as the Plaintiff is proceeding pro se, her pleadings are considered pursuant to this liberal standard. However, even after review and consideration of the allegations of Plaintiff's Complaint pursuant to these cited standards, the undersigned finds and concludes that the Defendant is entitled to dismissal of this case.

Looking first at Plaintiff's original Complaint, Plaintiff alleged that she was "harassed and intimidated through March 29, 2008". Plaintiff further alleged that she was "subjected to disparate terms and conditions through March 29, 2008" and was "denied reasonable accommodation through March 30, 2008". Plaintiff alleged that, prior to that time, she had been required to work on days before and after major holidays in 2006 through 2007, while white employees were not, and that when she had become sick on August 3, 2007 and "found semi-conscious in the ladies bathroom", the department where she worked (Department of Pediatrics, Division of Neonatology) failed to follow MUSC policy and procedure and placed her "in an isolated, dusty work area that had not been cleared or cleaned . . . ." Plaintiff alleges she "called MUSC security to investigate [her] personal items, pictures and breathing machine container [being] placed on the floor", and was "called a slave by [her] white employer and ask[ed] to stay beyond



[her] work hours." Plaintiff also complains that she was required to provide her doctor's telephone number so that the Defendant could confirm that she was scheduled for some surgery.

Plaintiff also complains that she was forced to take a research coordinator development course in the fall of 2007, even though her job had nothing to do with research, as well as a training class that had nothing to do with her job. Plaintiff further alleged that she developed a rare muscle disease, myasthenia gravis, that caused her to have difficulty breathing, walking, talking, and resulted in eye weakness, and that as a result of concerns she raised an investigation was conducted at MUSC "into odd cluster of illness". Plaintiff alleges that when she complained about the situation, she was discriminatorily intimidated, harassed, and denied reasonable accommodation to make her quit. Plaintiff alleges that as a result of this treatment, she has required counseling that continues to the present. Plaintiff alleged that she was discriminated against because of her race (African-American), her age (d/o/b 5-16-57), her medical condition, and in retaliation for employment practices declared unlawful by the South Carolina Human Affairs law, the ADEA, the ADA, and Title VII. Plaintiff further discussed some medical problems she had in 2005, going back as far as 1997. Finally, Plaintiff complained that, following a "late yearly evaluation", she received a two percent (2%) pay increase while "others" received a three percent (3%) increase. Plaintiff seeks monetary and declaratory relief. See generally, Complaint.

Plaintiff attached to her original Complaint a copy of a Right to Sue letter dated June 30, 2011, copies of various medical documents and (apparently) deposition testimony from 2009[4],

---

[4]Plaintiff had a previous action in this Court, Jenkins v. Medical University of South Carolina, Civil Action No. 2:06-3151, which had originally been filed in state court and then removed to federal court by the Defendant, in which Plaintiff's federal claims were dismissed with her state claim being remanded to the South Carolina Court of Common Pleas. That prior action included some of
(continued...)



various emails and other documents dating back to 2005/2006, a pharmacy list showing drugs prescribed from 2009 to 2011, some other medical documents from 2006 through 2009, a copy of an article from the Charleston *Post and Courier* from August 15, 2010 about a complaint that workers at MUSC had developed myasthenia gravis, some additional medical documents from 2009 and 2010, various emails and additional documents from 2006 and 2007, additional pages from an unidentified deposition, and various employment forms from 2006 and 2007. See generally, attached exhibits to Complaint.

In her Court filing of January 3, 2012 (Court Docket No. 49), submitted in response to the order granting Defendants' motion for more definite statement, Plaintiff submitted some additional medical records from 2006. Plaintiff also attached as exhibits to her second filing of that date (Court Docket No. 50-1) copies of a charge of discrimination filed with the South Carolina Human Affairs Commission on December 15, 2008, wherein Plaintiff complains of discriminatory treatment through May 2, 2008, together with a notification that the Equal Employment Opportunity Commission would be responsible for the processing of Plaintiff's Complaint.

In what the Court (and the Defendant) have construed as Plaintiff's supplemental complaint (Court Docket No. 50), Plaintiff alleges that her complaint concerning working before and after major holidays arose from incidents in 2006 through July 31, 2007. Amendments to Complaint, pp. 1-5. The incident concerning a white employer referring to her as a "slave" is alleged to have occurred in December 2003 or January 2004. Id., pp. 6-9. Plaintiff alleges that she was

---

⁴(...continued)
the claims Plaintiff discusses in her current Complaint, although the Defendant has not sought dismissal here on res judicata grounds. The Defendant does represent in its motion to dismiss that, on remand, Plaintiff's state claim in her prior case was also dismissed.



threatened with termination if she continued to complain or cause "problems" in March 2006. Id., pp. 9-11. Plaintiff alleges that other incidents where she was threatened with termination occurred in August 2006 (Id., pp. 11-12), September 2004 (Id., pp. 12-13), and the beginning part of 2004 (Id., pp. 13-14). With respect to her medical claim, Plaintiff alleges that she became ill at work and did not receive proper treatment in accordance with the ADA on October 19, 2006. Id., pp. 14-16. With respect to age discrimination, Plaintiff alleges that she was passed over for a position in favor of a younger, white employee in approximately January 2007, Id., pp. 16-17, and that she was passed over on another occasion in favor of a white employee on approximately October 5, 2006. Id., pp. 18-19.

With respect to her Equal Pay Act claim, Plaintiff alleges that she was an administrative specialist and program coordinator for the newborn screening program, and that she was the lowest paid employee in the Department of Pediatrics with that title. No dates are provided, but Plaintiff does list several other females who she asserts were less qualified, had less education, or less clinical experience. Id., pp. 19-21. Plaintiff further generally alleges that she was subjected to discriminatory treatment in February 2005, July 2006, March 2005, July 2005, January 2006, April 2006, July 2006, August 2007, March 2007, June 2007, January 2007, February 2008, May 2008, an incident for which she does not remember the date, June 2006, September 2006, October 2006, November, 2006, January 2007, March 2007, February 2007, March 2007, May 2007, June 2007, October 2007, September 2007, July 2006, January 2008, February 2008, September 2005, April 2007, October 2006, March 2007, June 2005, September 2006, October 2006, April 2007, October 2006, April 2007, March 2007, September 2006, and October 2006. Id., pp. 21-74.

Finally, in her response filed in opposition to the Defendant's motion to dismiss,

6



Plaintiff has submitted another seven hundred twenty-three (723) pages of documents which she contends support her claims, many of which are duplicates of exhibits previously submitted.

## SCHAL Claim

Defendant argues in its motion to dismiss that, to the extent Plaintiff's claims are asserted under the South Carolina Human Affairs Law, S.C. Code Annotated § 1-13-90, et seq., they are subject to dismissal for having been brought out of time. Specifically, Defendant argues that South Carolina Code Annotated § 1-13-90(d)(6) requires that an action be brought pursuant to the South Carolina Human Affairs Law within one (1) year from the date of the violation alleged, or within one hundred twenty (120) days from the date the complainant's charge is dismissed, whichever occurs *earlier*, and that since none of Plaintiff's alleged complaints of discrimination occurred after March 30, 2008[5], any state Human Affairs law claim is barred because the time for her to file her Complaint expired no later than March 30, 2009, and Plaintiff did not her the lawsuit until September 22, 2011, over two years later.

The undersigned is constrained to agree. Chambers v. Medical University Hospital Authority, No. 11-261, 2011 WL 2559605 at * 2 (D.S.C. June 28, 2011) (citing S.C. Code Ann. § 1-13-90(d)(6); cf. Whitten v. Fred's, Incorporated, 601 F.3d 231, 238-239 (4th Cir. 2010)[discussing statute's requirement to file within one (1) year of the date of the violation or within one hundred and twenty (120) days from the date the complaint's charge with SCHAC is dismissed, and finding that one (1) year from date of violation controlled where EEOC, rather than SCHAC, issued dismissal letter, with the earlier date applicable to a SCHAC dismissal]. In her response to the

---

[5]Although Plaintiff's administrative charge lists the latest date of discrimination as having been May 2, 2008, and Plaintiff does include an alleged May 2008 act of discrimination in her Complaint, for purposes of Defendant's argument that later date would not make any difference.

7



Defendant's motion, Plaintiff seems to argue that she had until her receipt of the Right to Sue letter, which she contends she did not receive until September 22, 2011, to file her South Carolina Human Affairs Law claim. See Court Docket No. 66, p. 6. However, the Defendant correctly notes that that is not the law. See S.C. Code Ann. § 1-13-90(d)(6); cf. Whitten, 601 F.3d at 238-239; Chambers, 2011 WL 2559605 at * 2. Therefore, any claims Plaintiff is asserting pursuant to the South Carolina Human Affairs Law must be dismissed.

### Federal Discrimination Statutes

With respect to Plaintiff's claim of race discrimination under Title VII, disability discrimination under the ADA, and age discrimination under the ADEA, Defendant asserts that any claims brought pursuant to these statutes which predate February 19, 2008, three hundred (300) days prior to December 15, 2008 (the date Plaintiff alleges she filed her administrative claim with SCHAC and/or the EEOC), are time barred and must be dismissed. Again, the undersigned is constrained to agree.

In order to bring a lawsuit in United States District Court under Title VII, the ADA, or the ADEA, a plaintiff is first required to properly exhaust his or her administrative remedies. Specifically, these statutes require that a claimant file a charge of discrimination with the EEOC within one hundred and eighty (180) days of the alleged discriminatory act or acts, or, if the alleged discrimination occurred in a "deferral state", within three hundred (300) days from the alleged discriminatory act or acts if the claimant initially institutes proceedings with the appropriate state agency, or within thirty (30) days of the state agency's termination of its proceedings, whichever is earlier. See 42 U.S.C. § 2000e-5(e); 42 U.S.C. § 12117(a)[ADA adopts procedures set forth in § 2000e-5(e)]; 29 U.S.C. § 626(d)(2). Since South Carolina is a deferral state, the South Carolina

8



Human Affairs Commission (SCHAC) is the appropriate state agency for purposes of Defendant's motion, and Plaintiff filed her charge of discrimination with SCHAC on December 15, 2008. See Plaintiff's Exhibit (Court Docket No. 50-1). Therefore, Plaintiff is barred from pursuing claims in this lawsuit with respect to any alleged discriminatory act which falls outside of the three hundred (300) days time period; i.e., prior to February 19, 2008. United Black Firefighters of Norfolk v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979); Mickel v. South Carolina State Employment Serv., 377 F.2d 239, 242 (4th Cir. 1967); see National RR Passenger Corp. v. Morgan, 536 U.S. 101, 110 (2002).[6]

---

[6] A claimant may in some circumstances include claims beyond this three hundred (300) day period where the Defendant's conduct is deemed to be a "continuing violation." However, under the applicable caselaw, separate and distinct acts of discrimination, as are alleged by the Plaintiff here, are not considered as part of a "continuing violation" together with any prior (and untimely) allegedly discriminatory decisions which involved the same claimant. See Morgan, 536 U.S. at 117 [finding that "discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice'," and prior discrete discriminatory acts which are not filed within the 300 day time limit "are untimely filed and no longer actionable."]; Williams v. Giant Food, Inc., 370 F.3d 423, 429 (4th Cir. 2004) [continuing violation doctrine does not apply to a failure to promote claim, as a promotion decision is a discreet act of discrimination]; Noel v. The Boeing Co., 622 F.3d 266, 271-272 (3d Cir. 2010)[Fair Pay Act (a/k/a Ledbetter Act) which made each paycheck stemming from a discriminatory decision or pay structure an independent employment action that triggered the 300-day administrative limitations period did not apply to Title VII failure to promote claim even though it ultimately resulted in employee receiving lower compensation]; Vogeler v. Conserv., FS, No. 10-50258, 2012 WL 357913 at * 2 (N.D. Feb. 1, 2012)["Ledbetter Act" is directed at situations such as unequal pay for equal work]. While Plaintiff could include prior acts of discrimination under a "continuing violation" theory if she has asserted a hostile work environment claim; cf. Huckabay v. Moore, 142 F.3d 233, 239 (5th Cir. 1998) [distinguishing applicability of the continuing violation theory to hostile work environment claims, for which it may be used, from other types of claims, such as failure to promote]; even assuming for purposes of summary judgment that Plaintiff has asserted a hostile work environment claim in this lawsuit, that claim would still be subject to dismissal because none of the conduct alleged which falls within the 300 day limitations period deal with a hostile work environment claim. See, discussion, infra. The Supreme Court in Amtrack v. Morgan, 536 U.S. 101 (2002), held that while a hostile work environment claim is composed of a series of separate acts, the entire time period of the hostile work environment may be considered by a court for purposes of summary judgment only where 'an act contributing to the claim occurs within the filing period." Godoy v. Maplehurst Bakeries, Inc., 747
(continued...)



In addressing this issue in her response to the Defendant's motion, Plaintiff simply argues that her claim should not be found to be time barred because Congress, through the enactment of these statutes or other statutes, has abrogated state Eleventh Amendment immunity,[7] that the Defendant has acted unethically, and because defense counsel failed to abide by an order issued in Plaintiff's previous case to conduct mediation. However, none of these arguments excuse Plaintiff's failure to timely file an administrative charge with respect to any claims she might be asserting which predate February 19, 2008. Therefore, any claims which pedate February 19, 2008 must be dismissed.

Turning then to the allegations of Plaintiff's original Complaint, while Plaintiff makes the general allegation in her original Complaint that she was harassed, intimidated and subjected to disparate terms and conditions of treatment through March 29, 2008, and was denied reasonable accommodations through March 30, 2008, in response to the Court's Order granting the motion for more definite statement, Plaintiff lists only a few incidents that fall within the applicable 300 day time period, with the remainder all predating 2008.[8] Specifically, in her supplemental filing of January 3, 2012, Plaintiff references having been given a letter on May 20, 2008 from the Defendants stating that they were unable to provide a safe working environment for her due to her extensive medical condition (<u>Amendments to Complaint</u>, pp. 37-38), and that the Defendant failed to provide accommodation beginning in February 2008 after she was diagnosed with fibromyalgia (<u>Id</u>., pp. 51-

---

[6](...continued)
F.Supp. 2d 298, 309 (D. Puerto Rico 2010).

[7]MUSC is a state institution.

[8]All of the specific incidents Plaintiff references in her original Complaint also predate 2008.



53). Both of these allegations relate to Plaintiff's ADA claim. Plaintiff lists no incidents from February 19, 2008 forward regarding her age, race, or which could be construed as relating to a hostile work environment claim. Therefore, Plaintiff's claims under Title VII and/or the ADEA are subject to dismissal. Further, even assuming that Plaintiff's two timely allegations are sufficient to otherwise state a claim under the ADA, the Defendant correctly notes that ADA claims seeking monetary damages against state agencies are barred in federal court by the Eleventh Amendment to the United States Constitution. Tennessee v. Lane, 541 U.S. 509, 521-522 (2004); Board of Trustees of University of Alabama v. Garrett, 531 U.S. 356 (2001). Therefore, even assuming Plaintiff has set forth a timely ADA claim, it may not be pursued in this United States District Court.[9]

Therefore, Plaintiff has failed to allege facts sufficient to give rise to a plausible claim under the ADA, the ADEA, or Title VII, and these claims must be dismissed. Cf. Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir. 2002)[Plaintiff has burden of alleging facts sufficient to state all the elements of a claim]; Harper v. United States, 423 F.Supp. 192, 196 (D.S.C. 1976)["[W]here the claims in a complaint are insufficiently supported by factual allegations, these claims may be properly dismissed by summary dismissal"]; Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)["While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . [f]actual allegations must be enough to raise a right to relief above the speculative level"].

---

[9]However, in the event Plaintiff may wish to attempt to pursue any such claims in state court, her medical claims should be dismissed from this case without prejudice. Cf. Perry v. Pennsylvania, 328 Fed. Appx. 785, 786-787 (3d Cir. 2009); Williamson v. Georgia Dep't of Human Resources, 150 F.Supp. 2d 1375 (S.D.Ga. 2001).

11



**EPA Claim**

Finally, with respect to Plaintiff's Equal Pay Act claim, the applicable statute of limitations for an EPA claim is two (2) years. 29 U.S.C. § 255(a). But see Grover v. Smarte Carte, Inc., ___ F. Supp. 2d ___, 2011 WL 6739502, *9 (D.Minn. 2011). Plaintiff filed this lawsuit on September 22, 2011. Therefore, even assuming that Plaintiff's EPA claim is otherwise viable, Plaintiff could recover under the EPA only for violations that occurred on or after September 22, 2009.

Plaintiff does not mention her EPA claim in her brief opposing the Defendant's motion (other than in her first paragraph wherein she lists pay disparity as being one of her claims, and a one sentence reference in the following paragraph where she states "many felt that my salary wasn't high enough"). In her original Complaint Plaintiff states only that she received a two (2%) percent pay increase while "others" received a three (3%) percent increase, but does not provide any dates for when this action allegedly occurred or who the individuals involved were. Similarly, while in her supplemental filing Plaintiff provides a little more detail with respect to her EPA claim, stating that she was the "lowest paid in the department of pediatric[s] with [her job] title", she again provides no dates, although for purposes of the Defendant's motion the undersigned has assumed that this alleged pay disparity continued through Plaintiff's last day of work.[10]

In any event, even if Plaintiff could survive the time bar for her EPA claim, the allegations of Plaintiff's Complaint are not sufficient to state a claim under that statute. The Equal

---

[10]Her last day was apparently May 2, 2008. See Court Docket No. 50-1, p.4. Cf. 42 USC § 2000e-5 (e)(3)(A)["Ledbetter Act"]; Groesch v. City of Springfield, Illinois, 635 F.3d 1020, 1028 n. 4 (7th Cir. 2011)[discussing applicability of Ledbetter Act to salary discrimination claims outside of Title VII].

12



Pay Act provides that

> (1) No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex....

29 U.S.C.§ 206(d)(1).

Under this statute and the applicable interpreting case law, in order to establish a prima facie case under the Equal Pay Act, Plaintiff must show that she received less pay than a male co-employee performing work substantially equal in skill, effort, and responsibility under similar working conditions. Wheatley v. Wicomico County, Md., 390 F.3d 328, 331 (4th Cir. 2004), cert. denied, 544 U.S. 1032 (2005); Houck v. Virginia Polytechnic Inst. & State Univ., 10 F.3d 204, 206 (4th Cir. 1993). If Plaintiff establishes her prima facie case, the burden shifts to the Defendant to prove that the difference in salary is justified by one or more of the four statutory exceptions. 29 U.S.C. § 206(d)(1) (2002); Equal Employment Opportunity Comm'n v. Aetna Co., 616 F.2d 719, 724 (4th Cir. 1980)(quoting § 206(d)(1)). If the Defendant successfully meets this burden, then the Plaintiff's claim fails "unless the plaintiff can satisfactorily rebut the defendant's evidence." Strag v. Board of Trustees, 55 F.3d 943, 948 (4th Cir. 1995).

Here, Plaintiff's EPA claim fails because every co-worker she identifies as being less qualified, with less education and/or less clinical experience, but receiving a higher salary, is also a female. See Plaintiff's Supplemental filing, p. 21. As noted, to establish a prima facie case under the Equal Pay Act, Plaintiff must allege facts to show that she received less pay than a *male* co-

13



employee performing the substantially same work as she was performing. Gibson v. American Apartment Management Co., Inc., No. 10-253, 2010 WL 3656038 at * 2 (E.D.Tenn. Sept. 14, 2010)[Allegations were insufficient to survive a motion to dismiss EPA claim where comparator was a member of the same sex]; Fairclough v. WAWA, Inc., No. 09-2153, 2010 WL 2179153 at * 5 (D.N.J. May 28, 2010)[Finding that where Plaintiff only alleged she was paid less than an employee of the same sex, Plaintiff failed to establish a prima facie case]; cf. Houck, 10 F.3d at 206; see Sandoval v. City of Boulder, Colo., 388 F.3d 1312, 1327-1328 (10th Cir. 2004); Hein v. Oregon College of Educ., 718 F.2d 910, n. 5 (9th Cir. 1983); Prewett v. State of Alabama Dep't of Veteran Affairs, 419 F.Supp.2d 1338, 1352 (M.D.Ala. 2006), opinion vacated on reconsideration by, 553 F.Supp. 2d 1160 (M.D.Ala. 2007). Plaintiff has not alleged that any male co-employee was receiving higher pay for substantially the same work. Therefore, this claim is subject to dismissal. Frey v. City of Herculaneum, 44 F.3d 667, 671 (8th Cir. 1995)["Complaint must contain facts which state a claim as a matter of law . . . ."]; see also Harper, 423 F.Supp. at 196 ["[W]here the claims in a complaint are insufficiently supported by factual allegations, these claims may be properly dismissed by summary dismissal"]; see also Dickson, 309 F.3d at 213 [Plaintiff has burden of alleging facts sufficient to state all the elements of a claim].

## Conclusion

Based on the foregoing, it is recommended that the Defendant's motion be **granted,** and that this case be **dismissed.**[11] Iqbal, 129 S.Ct. at 1939 [Rule 12 Motion can be granted where Plaintiff has failed to set forth sufficient matters in the complaint to state a plausible claim for relief

---

[11] Plaintiff's medical claims should be dismissed without prejudice. See, discussion, p. 11, and n. 9, supra.



"on its face"].

        The parties are referred to the Notice Page attached hereto.

                                                  _____
                                                  Bristow Marchant
                                                  United States Magistrate Judge

April 9, 2012
Charleston, South Carolina

15



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> Post Office Box 835
> Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).
